Chancellor Johnson,
[after making the foregoing statement of facts, and of the questions arising out of them.]
Whether trusts are created by deed or will, the rules of interpretation are, in general, the same in the Courts both of law and equity. Equity indeed follows the rules prescribed by the Courts of law in regard to the creation and limitation of legal estates.. — 2 Mad. Ch. 452, and the cases cited in the notes. If created by deed, the construction is determined by the rules of law prescribed for the interpretation of deeds, all of which are resolved into the universal rule, that whether by deed or will, the intention, to be ascertained according to the rules of law, must govern.
In the solution of the first proposition, we are, therefore, led to inquire, what was the intention of the testator in reserving to himself, in the deed, *¿881 Power °f “ revoking any limitation or ^appointment the said 4o°J ]\£ary may make, and of declaring the uses of the said two-thirds parts of the said remainder,” &c. And upon recurring to the deed and examining its contents, it will be found thatfthe whole estate, real and personal, is conveyed to the trustee, George Bruce, in trust for the testator during his life, and after his death, one-fourth part to the use of his illegitimate children in fee ; one-third part of the remainder to his intended wife for life, remainder to the children of the marriage in fee; and the re *373 maining two-thirds of the said remainder to the use of'such person or persons as his said intended wife might appoint, and in default of such appointment, to the use of the said intended wife in fee. Here then is a final disposition of the testator’s, whole interest in the estate, and you look in vain through the deed for any reservation of power which authorizes him to revoke, change or alter any grant, condition or limitation which he himself has made in that deed. The power reserved is in terms, that of “ revoking any limitation or appointment that the said Mary Hunter may make,” and of declaring other uses, and could not therefore be exercised until the case provided for (an appointment by the intended wife) had been made.
The question may be simplified and better understood, by supposing that instead of a deed like this, there had been mutual covenants between the parties — on the part of the testator, to grant the estate to the intended wife, and to such person or persons as she may appoint, and in default of such appointment, to the intended wife in fee; and on the part of the intended wife to permit the testator to revoke any appointment she might make, and which he disapproved, and to declare other uses. Can it be maintained, that the power of relocation existed independent of the previous exercise of the power of appointment? or that under the covenant to permit the testator to revoke the appointment, he might revoke his own deed ? There is certainly no principle or rule of law to authorize such a perversion of the obvious intent: and yet the cases are identical
Conceding, however, that the power of revoking the deed was reserved to the testator, independent of the exercise of the power of appointment by the wife, still I think it very clear that the will was not intended, and cannot operate as a revocation and declaration to other uses.
In the rules prescribed for the construction of wills, there are *none more familiar, than that the intention of the testator to be r^. „ collected from the whole will must govern, and that if possible it L 4°y must be so construed that the whole must stand together, and effect given to every provision in it. Now, that the testator did not intend, by his will, to revoke the marriage settlement, is conclusively shown by his recital and positive re-affirmation of it in the will. “I do by these presents confirm a marriage deed or settlement, dated,” &c., is the language of the will; and the rule is, that a paper writing recited or referred to in a will, is incorporated with, and constitutes a part of the will, as much so as if the testator had declared his will in the terms of the writing._ Habergham v. Vincent, 2 Ves. 228. But it is said that the subsequent provisions of the will are inconsistent with the deed, and therefore operates as a revocation of theMeed and an appointment to uses, although there is no express declaration of an intention to revoke. Now, it is true, that the intention to revoke need not be expressed in the will, but the intention must be so clear that no other reasonable intent can be imputed to the will; nor will it be permitted to operate as a revocation where the will can have its operation without it. — Bradish v. Gribbs, 3 John. Ch. Rep. 551: nor unless it is demonstrable that the testator had the power in his contemplation, and intended by his will to execute it.__ Doe v. Roake, 2 Bing. 497; 9 Eng. Com. Law Rep. 496. And it re mains to be seen, whether the inconsistencies between the deed and the *374 will, are so irreconcilable that the will cannot operate consistently with the deed.
It is before noticed that the will contains an express re-affirmation of the deed, and following that, is the general residuary clause by which the testator disposes of the residue and remainder of his estate to his three younger children with cross remainde2’s ove2\ In this there is certainly nothing inconsistent with the deed. It operates on subsequently-acquired property, if there is any, but if there is nothing on which it can operate, it does not revoke the provisions of the deed. Then follows the clause last above recited, by which the testator declares, that “ it is my wish that my wife, Mary, and my several children by her, remain on 2ny plantation under the direction of my executors, until my crops be housed and a suitable and comfortable place be prepared for them on one of my upper plantations,” &c. ; and in the same clause goes on to direct that his negroes should be hired out, and his mills rented, (property of which he was confessedly seized and *possessed at the time of the execution of the deed,) and to make other dispositions, inconsistent with the distribution provided for in the deed, at the time of his death. It will be observed, however, that this clause begins with, “it is my wish,” and although these terms are frequently held to import a direct devise or bequest, or to create a trust, (6 Cruise Dig. 144-204,) and would generally so operate where the will contained nothing inconsistent with it; yet the rule is not so imperative as to compel us to do violence to the general intent in giving them that effect. In their general acceptation they Í2nport an inclination or disposition of the mind, not an act of the will; and it is, I think, very apparent that the testator intended them so to be understood'here, at least so far as they appear to be inconsistent with the limitations of the deed. The preceding clauses, it will be recollected, contained a final disposition of all his estate, real and personal — the deed of the property described in it, and the residuary clause, of every thing else that he possessed; and if this last clause is interpreted a direct bequest, it leads to that inconsistency and repugnancy which the rules of construction repudiate. If taken in their ordinary acceptation, they are merely advisory, and render the will thus far consistent — and this I take to be their true interpretation. This last clause, however, contains directions to the executors to allow the wife, daring her natural life or widowhood, household and kitchen furniture, horses and other stock, so as to afford her and her children a reasonable and comfortable support, and is thus far consistent with the deed, and may well stand with it and supersede the preceding residuary clause.
On the third and last proposition, there is, if possible, still less doubt. On the death of the testator, two-thirds of the remainder of the estate is limited by the terms of the deed, to such person or persons as the wife, Ma2-y, should by deed or will limit and appoint, and in default of such appointment, to the wife, her heirs, executors, administrators and assigns forever. No appointment has been made, and the question is, what estate does she take ?
The general rule is, that when a greater and a less estate concentre in the same person, the lesser merges in the greater; or, according to the Master of the Nolls, in Philips v. Bridges, 2 P. W. 126, where a legal and equitable estate unite in the same person, there is nothing on which *375 the equitable can act; or in better phrase, it no longer exists. So in the case of Wagstaff v. Wagstaff, *2 P. W. 259, where the Lord Chancellor supposes the case of a trust for the use of J. S., his L heirs and assigns, or to such person or persons as he shall appoint; on which he observes, that the last words (such person or persons as he shall appoint) are no more than is implied before, et expressio eorum quce tacite insunt nihil operatur: and if the terms of this limitation in the deed are transposed, which may be done without in the least impairing the intent, we have the precise ease. Upon the death of the testator, Mai’y, the wife, therefore took an absolute estate in the remaining two-thirds of the estate described in the deed — Sugden on Powers, 58.
By the terms of the deed one-fourth part of the real and personal estate is limited to the testator’s illegitimate children, taking into due estimate such real and personal estate by him given to them or any of them. The power of selling, disposing of, changing or exchanging, of all or any part of the estate, is also reserved to the testator, provided, however, that the proceeds thereof should be subject to the same uses, limitations and conditions as in the original deed. It is probable, too, that the testator acquired property subsequently to the execution of the deed, or had other property at the time on which the residuary clause of the will would operate; and before the partition prayed for can be awarded, it will be necessary to ascertain in what amount the illegitimate children were respectively advanced by the testator; what property contained in the deed, if any, had been sold, disposed of, exchanged or re-exchanged, and whether the proceeds had been reinvested, and. in what; and whether the testator was, at the time of his death, seized and possessed of any, and what other real and personal estate.
It is therefore ordered and decreed, that the decree of the Circuit Court be and the same is hereby set aside and reversed, and that the case be referred back to the Commissioner to ascertain — 1. In what the testator’s illegitimate children, Laney Andrews, Solon Andrews, Satyra Andrews and Cambyses Andrews, had been advanced by him in his lifetime, and its value: 2. Whether the testator, in his lifetime, sold or otherwise disposed of the whole or any part of the property described in the said deed, and whether the proceeds have been reinvested, and in what; or whether anything, and what, has been substituted in its place : 3. Whether the testator was, at the time of his death, *seised and p*, possessed of any other real or personal estate than that described L ^ in the deed and not specifically disposed of by the will, and in what it consisted. On the coming in of this report, a writ of partition will be ordered for the partition of the real and personal estate, as well as that described in the deed, as any other of which the testator may have died seized and possessed, not specifically disposed of by the will, according to the principles of this decree.
Chancellor Johnston, and Justices O’Neall, Gantt, Earle and Butler, concurred.